IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANON ROY SANTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-21-3489 |
| | § | |
| OCEANEERING INTERNATIONAL, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Plaintiff's Motion to Remand (Document No. 7). Having considered the motion, submissions, and appliable law, the Court determines the motion should be denied.

## I.  BACKGROUND

This case arises out of a personal injury which occurred on a vessel. Since at least 2004, Plaintiff Shanon Roy Santee ("Santee") has been employed by Defendant Oceaneering International, Inc. ("Oceaneering") as a remote operated vehicle ("ROV") technician. Oceaneering provides subsea products and services to companies focused on the exploration and development of oil and gas resources. On January 11, 2021, Santee was working on the *M/V Deepwater Conqueror* (the "*Deepwater Conqueror*") as a ROV supervisor pursuant to Oceaneering's contract with Defendant Chevron U.S.A. Inc. ("Chevron") when he suffered a shoulder and

back injury while performing maintenance work.¹ At the time, the *Deepwater Conqueror* was performing drilling operations in the Gulf of Mexico pursuant to the terms of an agreement between Defendant Transocean Offshore Holdings, Ltd. ("Transocean"), an offshore drilling contractor, and Chevron. Neither Oceaneering, Transocean, nor Chevron (collectively, "Defendants") owned or operated the *Deepwater Conqueror*.² On January 13, 2021, Santee reported his alleged injury to Transocean which was documented in an incident report form.

Based on the foregoing, on September 14, 2021, Plaintiff commenced this action in the Harris County District Court for the 165th Judicial District, asserting: (1) a negligence cause of action under the Jones Act against Defendants; (2) unseaworthiness against Defendants; and (3) failure to pay maintenance and cure against Oceaneering. On October 22, 2021, Chevron removed this action with the consent of Transocean and Oceaneering on the basis of federal question jurisdiction. On November 19, 2021, Santee moved to remand.

---

¹ Santee's original petition alleges he sustained his injuries on January 1, 2021. However, Oceaneering and Defendant Transocean Offshore Holdings, Ltd. show Santee was not aboard the *Deepwater Conqueror* on January 1, 2021, and the incident report Santee completed regarding the alleged accident states he sustained the injury on January 11, 2021. Therefore, the Court assumes for the purposes of this Order the alleged accident occurred on January 11, 2021 and not on January 1, 2021.

² The owner and operator of the *Deepwater Conqueror* was Triton Conqueror GmbH, who has not been named in this suit.

## II. STANDARD OF REVIEW

A defendant may remove a case to federal court if the federal court has subject matter jurisdiction to hear the original complaint. 28 U.S.C. § 1441(a). Federal courts have limited jurisdiction, so any doubts regarding whether federal jurisdiction is proper are resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). When evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Harford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## III. LAW & ANALYSIS

Santee contends: (1) he is a seaman protected by the Jones Act, and thus removal was improper; and (2) the Outer Continental Shelf Lands Act ("OCSLA") does not provide federal question jurisdiction, assuming this action was removable. Oceaneering contends Santee fraudulently pleaded his Jones Act claim, making removal proper. Chevron and Transocean jointly contend: (1) Santee cannot bring a Jones Act claim against either of them because he was not an employee of Chevron or Transocean; and (2) there is federal question jurisdiction under OCSLA. As a

threshold matter, the Court first addresses whether Santee's Jones Act claim is fraudulently pleaded, before evaluating if OCSLA applies.

A.   *Jones Act Claim*

Typically, Jones Act claims are not removal. *Sanchez v. Smart Fabricators of Tex., LLC*, 997 F.3d 564, 569 (5th Cir. 2021). However, "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulent pleaded to prevent removal." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993). The Court may deny remand only if, after "resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor," there is no "reasonable possibility of establishing a Jones Act claim on the merits." *Mendez v. Anadarko Petroleum Corp.*, 466 F. App'x 316, 318 (5th Cir. 1995) (per curiam). Crucial to determining whether a Jones Act claim is determining if the plaintiff is considered a seaman under the Jones Act.

Through a series of cases, the Supreme Court created a two-pronged test to determine if a plaintiff is considered a seaman under the Jones Act: (1) person's duties must contribute to the function or mission of the vessel; *and* (2) the person must have a connection to the vessel or fleet of vessels that is substantial in duration and in nature. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 368 (1991); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995); *Harbor Tug and Barge Co. v Papai*, 520 U.S. 548. 554 (1997). The Fifth Circuit recently propounded additional

factors a Court must weigh when determining the nature of a potential seaman's connection to a vessel. Those factors are: (1) whether the worker owes his allegiance to the vessel, rather than simply to a shoreside employer; (2) whether the work is sea-based or involves seagoing activity; and (3) whether the worker's assignment to a vessel is limited to performance of a discrete task after which the worker's connection to the vessel ends, or if the worker's assignment includes sailing with the vessel from port to port or location to location. *Sanchez*, 997 F.3d at 574. The Court first evaluates whether Santee's work contributed to the function or mission of the *Deepwater Conqueror*.

### 1.   *Contribution to the Function or Mission of the Vessel*

Santee contends his position as an ROV operator contributed to the function or mission of the *Deepwater Conqueror*. It is undisputed Santee worked as a ROV technician aboard the *Deepwater Conqueror* pursuant to a contract between Oceaneering and Chevron to provide ROV services at the time of his alleged injury.[3] The *Deepwater Conqueror* was in the Gulf of Mexico to explore and produce hydrocarbons, which was aided by the use of Oceaneering's ROVs. Therefore, the Court finds Santee's position as a ROV technician contributed to the function or

---

[3] *Defendant Oceaneering International, Inc.'s Response to Motion to Remand*, Document No. 8, Exhibit 1, ¶¶ 28–30 (*Declaration of Michael Daigle*) [hereinafter *Declaration of Michael Daigle*].

5

mission of the *Deepwater Conqueror* and satisfies the first prong of the seaman-status test. The Court now turns to determine whether Santee's connection to the *Deepwater Conqueror* is sufficient in both duration and nature to establish his status as a seaman under the Jones Act.

2. *Connection to Vessel is Substantial in Duration and in Nature*

Oceaneering contends Santee did not have a sufficient connection to the *Deepwater Conqueror* to establish Santee's status as Jones Act seaman. Santee contends he does have a sufficient connection to the *Deepwater Conqueror* to be a seaman under the Jones Act. The Court first addresses whether Santee's work aboard the *Deepwater Conqueror* meets the durational requirement of the second prong of the seaman-status test before evaluating whether his work meets the nature requirement of the same.

a. *Duration Requirement*

Santee contends he pleaded sufficient facts to establish his status as a seaman under the Jones Act. Oceaneering contends Santee's work on the *Deepwater Conqueror* may not meet the durational requirement of the seaman-status test based on his work history. When analyzing the duration element of this prong of the seaman-status test, the "total circumstances of an individual's employment must be weighed." *Chandris*, 515 U.S. at 370. The *Chandris* Court also noted, agreeing with a prior Fifth Circuit opinion, "an appropriate rule of thumb" when analyzing the

6

duration requirement is "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. If the worker serves on multiple vessels, the worker must have a connection to a fleet of vessels under the "requisite degrees of common ownership or control." *Papai*, 520 U.S. at 557. However, the seaman-status inquiry is not limited "exclusively to an examination of the overall course of a worker's service with a particular employer." *Chandris*, 515 U.S. at 371–72.

Oceaneering concedes it is entirely not clear whether Santee has satisfied the durational requirement of the second prong of the seaman-status test. Santee began his employment with Oceaneering in 1999, but Oceaneering's records of Santee's work history beginning in 2004 shows he spent a large part of his career with Oceaneering on various vessels, often for nearly a month at a time.[4] The case law is not clear on whether the Court should consider Santee's entire career with Oceaneering or just the period of time during which Santee performed services under the contract with Chevron to determine if Santee meets the duration requirement. Therefore, the Court resolves this ambiguity in Santee's favor and will only consider the period of time during which Santee performed under the contract with Chevron. Between January 2016 and January 2021, Santee's work history indicates he worked

---

[4] *See Defendant Oceaneering International, Inc.'s Response to Motion to Remand*, Document No. 8, Exhibit 1-A.

approximately 763 days aboard the *Deepwater Conqueror* pursuant to Oceaneering's contract with Chevron.[5] Thus, based on Oceaneering's records of Santee's work history, Santee spent at least approximately 40% of his time over the last five years on the *Deepwater Conqueror*.[6] Therefore, the Court finds Santee's work history satisfies the durational requirement of the second prong of the seaman-status test. The Court now turns to the nature requirement of the second prong of the seaman-status test.

      b.      *Nature Requirement*

Oceaneering contends Santee's work on the *Deepwater Conqueror*, while sea-based, does not satisfy the nature requirement of the seaman-status test because: (1) at all times he owed his allegiance to Oceaneering, not the *Deepwater Conqueror*; and (2) Santee's work on the *Deepwater Conqueror* was pursuant to a ROV services contract which was transitory in nature, and not a permanent assignment. Transocean and Chevron both contend he was not a member of the *Deepwater Conqueror*'s crew, but rather was only a temporary contractor onboard to perform discrete services. Santee alleges he pleaded sufficient facts to establish his seaman-status under the Jones Act in his original petition against all Defendants.

---

     [5] *Declaration of Michael Daigle*, *supra* note 2, ¶ 30.

     [6] There were 1,858 days between January 1, 2016 and January 1, 2021. In that time period, Santee spent roughly 763 days on the *Deepwater Conqueror*. 763 is approximately 40% of 1,858.

When analyzing the nature element, "the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea" to "distinguish land-based form sea-based employees." *Papai*, 520 U.S. at 555. Recently, the Fifth Circuit promulgated additional factors to aid in the analysis of the nature of a plaintiff's connection to the vessel, which are: (1) whether the worker owes his allegiance to the vessel, rather than simply to a shoreside employer; (2) whether the work is sea-based or involves seagoing activity; and (3) whether the worker's assignment to a vessel is limited to performance of a discrete task after which the worker's connection to the vessel ends, or if the worker's assignment includes sailing with the vessel from port to port or location to location. *Sanchez*, 997 F.3d at 574. The Court evaluates the *Sanchez* factors in turn.

### i. *Allegiance to a Vessel or Fleet of Vessels*

Defendants contends Santee owed allegiance to Oceaneering, a shoreside employer, as its employee and not the *Deepwater Conqueror*. Santee contends his petition sufficiently alleges facts regarding his allegiance to the *Deepwater Conqueror* to support his Jones Act seaman status. The Fifth Circuit in *Sanchez* held Courts should also consider when determining the nature of a worker's connection to a vessel whether the worker owes his allegiance to the vessel, rather than simply to a shoreside employer. *Sanchez*, 997 F.3d at 574 (citing *Wilander*, 498 U.S. at 347).

9

Here, Santee was employed by Oceaneering, a shore based ROV services company mainly employed by oil and gas operators for offshore drilling. Santee's work on the *Deepwater Conqueror* was pursuant to a contract for ROV services between Oceaneering and Chevron. Further, between January 2016 and January 2021, Santee worked on other vessels, performing ROV services under different contracts for different customers.[7] Santee did not offer any proof showing he was employed by the owner or operator of the *Deepwater Conqueror*, or to a fleet of vessels to which it belongs. Santee contends he adequately alleges "he was injured while under the direction, supervision and while performing work pursuant to the instructions of Defendants."[8] However, Santee does not provide any evidence of this, but rather only makes conclusory allegations. On the other hand, Oceaneering produced evidence Santee was at all times an employee of Oceaneering and not an employee of the vessel's owner or operator, Transocean, or Chevron.[9] Oceaneering also produced evidence showing its ROV technicians were separate from the crew of the vessels on which they perform ROV services, and the ROV technicians even follow a separate chain of command from that of the vessel crewmembers and

---

[7] *Declaration of Michael Daigle*, *supra* note 2, ¶ 30.

[8] *Plaintiff's Reply to Defendants Joint Motion in Opposition to Plaintiff's Motion to Remand*, Document No. 11 at 13.

[9] *Declaration of Michael Daigle*, *supra* note 2, ¶¶ 19–25.

drilling crews.[10] Likewise, Transocean and Chevron both produce evidence showing Santee was not employed by either Transocean or Chevron or a crewmember on the *Deepwater Conqueror*.[11] Despite the fact Santee spent a significant amount of his time on the *Deepwater Conqueror* in order to perform his duties as a ROV technician, the Court finds Santee did not have an allegiance to the *Deepwater Conqueror* or to the fleet to which it belongs because he owned his allegiance to Oceaneering, his shore-based employer. Therefore, this factor weighs against finding Santee satisfies the nature requirement under the seaman-status test. The Count now addresses whether Santee's work was sea-based.

  ii. *Sea-based Work*

It is undisputed Santee's work as a ROV technician was sea-based, as ROVs are subsea vehicles which must be at sea to operate.[12] Oceaneering's own records show Santee spent a significant amount of time at sea on various contracts, for

---

[10] *Declaration of Michael Daigle*, *supra* note 2, ¶ 12.

[11] *Defendants Chevron U.S.A. Inc.'s and Transocean Offshore Deepwater Drilling Inc.'s Joint Opposition to Plaintiff's Motion to Remand*, Document No. 9, Exhibit A, ¶¶ 8–9 (*Declaration of David Mitchell*) [hereinafter *Declaration of David Mitchell*]; *Defendants Chevron U.S.A. Inc.'s and Transocean Offshore Deepwater Drilling Inc.'s Joint Opposition to Plaintiff's Motion to Remand*, Document No. 9, Exhibit B, ¶ 7 (*Declaration of Brian Stueben*) [hereinafter *Declaration of Brian Stueben*].

[12] *Defendant Oceaneering International, Inc.'s Response to Motion to Remand*, Document No. 8 at 11.

Chevron and other clients.[13] Therefore, the Court finds Santee's work on the *Deepwater Conqueror* was sea-based. Thus, this factor weighs in favor of finding Santee satisfies the nature requirement under the seaman-status test. Next, the Court evaluates whether Santee was permanently assigned to the *Deepwater Conqueror*, or it he was merely a transitory worker performing discrete tasks.

### iii. Assignment to Vessel

Oceaneering contends Santee was not permanently assigned to the *Deepwater Conqueror*, or even the fleet to which it belongs, but rather was a temporary contractor who provided discreet services pursuant to a contract. Santee contends he pleaded sufficient facts regarding his connection to the *Deepwater Conqueror* to establish his seaman-status. Case law has long held "specialized transient workers, usually employed by contractors" engaged to perform "specific discrete short-term jobs" are not considered seaman under the Jones Act. *Sanchez*, 997 F.3d at 576. This is because these workers usually have a "transitory or sporadic connection to a vessel or group of vessels" which is not sufficient to satisfy the nature prong of the test. *Id.* (quoting *Papai*, 520 U.S. at 559–60) (internal citations omitted).

Here, Santee's decades-long work history with Oceaneering shows he was never permanently assigned to a vessel or fleet of vessels, but rather temporarily

---

[13] *See Declaration of Michael Daigle*, *supra* note 2.

assigned to perform discrete services.[14] Even during his time working on the *Deepwater Conqueror*, Santee was periodically assigned to other vessels to perform ROV services under different contracts for different customers.[15] While Santee did spend a longer time on the *Deepwater Conqueror* than other contractors between 2016 and 2021, this was due to the nature of the ROV services he and Oceaneering provide and not because he was permanently assigned to the *Deepwater Conqueror*. Santee's presence on the *Deepwater Conqueror* was dependent on the contract for discrete services between Oceaneering and Chevron. Therefore, the Court finds Santee was not permanently assigned to the *Deepwater Conqueror*, or a fleet of vessels to which is belongs. Thus, this factor weighs against finding Santee satisfies the nature requirement under the seaman-status test.

As found above, Santee does not have an allegiance to, nor was he permanently assigned to, the *Deepwater Conqueror*, or a fleet of vessels to which it belongs. The only factor weighing in favor of finding Santee satisfies the nature requirement is the fact his work was sea-based. However, this alone is insufficient to establish the nature requirement under the second prong of the seaman-status test. Therefore, the Court finds the nature of Santee's connection to the *Deepwater*

---

[14] *Declaration of Michael Daigle*, *supra* note 2, Exhibit 1-A, 1–64.

[15] *Declaration of Michael Daigle*, *supra* note 2, ¶¶ 28–30.

*Conqueror* does not satisfy the second prong of the seaman-status test. Consequently, the Court finds Santee was not a seaman under the Jones Act. The Court further finds Santee has no reasonable possibility of establishing a Jones Act claim, and Santee's Jones Act claim was fraudulently pleaded to prevent removal. *See Mendez*, 466 F. App'x at 318 (holding a Court may deny remand of Jones Act claim if the plaintiff has no reasonable possibility of establishing his claim under the Jones Act). Thus, the Court finds this action was removable. Because the Court has found Santee's Jones Act claim was fraudulently pleaded and therefore removable, the Court must now determine if there is federal subject matter jurisdiction in this case.

B.   *OCSLA Jurisdiction*

Santee contends OCSLA does not apply in this case, therefore depriving the Court of subject matter jurisdiction. Defendants contend OCSLA does apply, because the *Deepwater Conqueror* was attached to the seabed in the process of exploring and producing oil and gas on the Outer Continental Shelf (the "OCS") at the time of Santee's alleged accident.

OCSLA asserts exclusive federal question jurisdiction over the OCS by specifically extending "[t]he Constitution and laws and civil and political jurisdiction of the United States . . . [to the OCS] and all installations and other devices permanently or temporarily attached to the seabed . . . for the purpose of

exploring for, developing, or production resources therefrom." 43 U.S.C. § 1332(a)(1). Further, a plaintiff need not expressly invoke OCSLA for it to apply. *Amoco Prod. Co. v. Sea Robin Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988). In order to determine whether a cause of action under OCSLA, the Fifth Circuit applies "a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (citing *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 495 (5th Cir. 2002), *overruled on other grounds by*, *Grand Isle Shipyard v. Seacor Marine*, LLC, 589 F.3d 778 (5th Cir. 2009) (en banc)).

Here, on January 11, 2021, the *Deepwater Conqueror* was a drillship performing drilling operations in the OCS, attached to the seabed, off the coast of Louisiana.[16] The *Deepwater Conqueror* was operating under a drilling contract between Chevron and Transocean, the purpose of which was for the exploration and development of oil and gas resources on the OCS.[17] Therefore, the Court finds Santee's alleged injury sustained on the *Deepwater Conqueror* while attached to the

---

[16] *Declaration of David Mitchell*, *supra* note 11, ¶ 10; *Declaration of Brian Stueben*, *supra* note 11, ¶¶ 3–5.

[17] *Declaration of David Mitchell*, supra note 11, ¶ 9; *Declaration of Brian Stueben*, *supra* note 11, ¶¶ 3–5.

OCS seabed while performing drilling services occurred on the proper situs. Further, as the Court found above, Santee's work as a ROV technician assisted in Chevron and Transocean's exploration and development of oil and gas resources. Lastly, Santee's alleged injury would not have occurred but for his employment with Oceaneering who contracted with Chevron to perform ROV services. Therefore, the Court finds OCSLA applies. Since OCSLA applies, federal question jurisdiction exits in this case.

Thus, this action was removable on the basis of federal question jurisdiction, and, as found above, the action was removable because Santee is not a seaman under the Jones Act. Accordingly, the motion to remand is denied.

## IV.  CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Plaintiff Shanon Roy Santee's Motion to Remand (Document No. 7) is **DENIED**.

Signed on January 27, 2022, at Houston, Texas.

_____
David Hittner
United States District Judge