# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SHANON ROY SANTEE,** | * | |
| *Plaintiff* | * | |
| | * | |
| **v.** | * | |
| | * | **CIVIL ACTION NO. H-21-3489** |
| **OCEANEERING INTERNATIONAL** | * | |
| **INC.,** *et al.* | * | |
| *Defendants* | * | |
| | * | |

**************************************

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO OCEANEERING'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR RECONSIDERATION

The plaintiff, Shanon Roy Santee, opposes the summary judgment motion filed by the defendant Oceaneering International, Inc. ("Oceaneering")[1] and requests reconsideration of this Court's order denying the plaintiff's motion for remand.[2] Because the evidence clearly shows that the plaintiff is a Jones Act seaman, the plaintiff respectfully suggests that the Court should (1) reconsider its order denying remand, and (2) deny the defendant's summary judgment motion.

## I.    INTRODUCTION AND BACKGROUND

The Court is familiar with this case. The plaintiff was severely injured while working onboard of the M/V DEEPWATER CONQUEROR as a remote operated vehicle ("ROV") superintendent. So, among others, he sued his employer—Oceaneering—in a Texas state court, asserting Jones Act, unseaworthiness, and failure to pay maintenance and cure claims. The case got removed to this Court on the basis of federal question jurisdiction. The plaintiff moved for remand arguing, *inter alia*, that he is a seaman protected by the Jones Act and that the removal

---

[1]     Rec. Doc. 19, Oceaneering's motion for summary judgment.

[2]     Rec. Doc. 17, court's order.

was improper. After making an evidentiary finding that the plaintiff is not a seaman, the Court denied remand. On the sole ground of this order, Oceaneering then moved for summary judgment and asked the Court to dismiss the plaintiff's claims against it.

The plaintiff now opposes Oceaneering's attempt at summary judgment and respectfully requests that the Court reconsider its order depriving the plaintiff of seaman status.[3] And, for three overarching reasons, the plaintiff suggests that the Court should (1) grant reconsideration, and (2) either moot Oceaneering's motion or, alternatively, deny it on the merits. The reasons underpinning these requests follow.

## II. LAW AND ARGUMENT

### A. In light of the evidence, reconsideration of the order denying remand is warranted; the Court's discretion is broad and should be exercised, here.

#### 1. A denial of a motion to remand is an interlocutory order subject to reconsideration "at any time" and "for any reason" deemed sufficient.

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration *per se*, but "a motion challenging a judgment or order may be filed under Rules 54, 59, or 60."[4] While Rules 59 and 60 only apply to final judgments, Rule 54(b) applies to interlocutory orders. It provides that any order "that adjudicates fewer than all the claims … [among] all the parties … may be revised ***at any time*** before the entry of a [final] judgment."[5] Notably, under Rule 54(b)— even in the absence of new evidence or an intervening change in or clarification of the substantive law—a district court has the inherent procedural power to "reconsider and reverse its decision for

---

[3]     In order to be in full compliance with local rules, the plaintiff will be filing a separate motion for reconsideration on the same grounds stated here.

[4]     *Kemp v. Belanger,* 2021 WL 5123734, at *2 (W.D. La. Nov. 3, 2021).

[5]     *Id.* (emphasis added). *See also Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 336 (5th Cir. 2017); *Mehar Holdings, LLC v. Evanston Ins. Co.,* 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016).

***any reason*** it deems sufficient."[6] Because an order denying remand is an interlocutory order,[7] Rule 54(b) governs any request for its reconsideration.[8]

Also relevant here, compared to Rule 59(e), Rule (54)b's approach to reconsideration is "more flexible"—reflecting the court's inherent power to afford such a relief as justice requires.[9] Because neither the Federal Rules nor the Fifth Circuit have articulated the precise standard by which to decide when reconsideration is merited,[10] whether to grant such a motion rests within the

---

[6]     *Id.* (emphasis added).

[7]     *Hadderton v. Lee,* 244 F.3d 135 (5th Cir. 2000) ("A denial of a motion to remand is not a final, but rather an interlocutory order."); *Mehar Holdings, LLC v. Evanston Ins. Co.,* 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016) ("Consequently, an order denying a motion to remand is an interlocutory order, and a motion to reconsider such an order is governed by Federal Rule of Civil Procedure 54(b).")

[8]     *Butler v. Denka Performance Elastomer LLC,* 2019 WL 697164, at *1 (E.D. La. Feb. 20, 2019) ("Rule 54(b) of the Federal Rules of Civil Procedure governs the plaintiff's motion to reconsider this Court's Order and Reasons in which it denied the plaintiff's request to remand to state court."). *See also Brown v. Wichita Cty., Tex.,* 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011).

[9]     *Butler,* 2019 WL 697164, at *1. *See also Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.,* 259 F. Supp. 2d 471, 475 (M.D. La. 2002) ("The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e), which is in turn less exacting than the standards enunciated in Rule 60(b).").

[10]    *Mehar Holdings, LLC v. Evanston Ins. Co.,* 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016).

district court's discretion.[11] And that discretion is broad.[12] The court is only required to determine "whether reconsideration is necessary" under the circumstances.[13]

2. **This request for reconsideration is timely; and more than sufficient reasons exist for the Court to grant it.**

Because a request to reconsider an interlocutory order—such as an order denying remand[14]—can be raised "at any time,"[15] there can be no question that the plaintiff's request here is timely. And the plaintiff respectfully suggests that there are at least four reasons for this Court to grant it.

*First,* a tort claim under the Jones Act is properly pled if it contains allegations that the injured person is a seaman who was acting within the scope of his employment when he was injured.[16] Put simply, in determining whether a Jones Act claim—claim rooted in a plaintiff's

---

[11]  *McClung v. Gautreaux,* 2011 WL 4062387, at *1 (M.D. La. Sept. 13, 2011) ("While the exact standard for deciding a Rule 54(b) motion to reconsider is unclear, 'whether to grant such a motion rests within the discretion of the court.' Moreover, 'the district court's discretion in this respect is broad.'") (internal citations omitted); *Brown v. Wichita Cty., Tex.,* 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011) ("Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court.") (internal citations omitted); *Mehar Holdings, LLC v. Evanston Ins. Co.,* 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016).

[12]  *Brown,* 2011 WL 1562567, at *2; *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) ("The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders.").

[13]  *Brown,* 2011 WL 1562567, at *2.

[14]  *Hadderton v. Lee,* 244 F.3d 135 (5th Cir. 2000); *Mehar Holdings, LLC v. Evanston Ins. Co.,* 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016).

[15]  *Kemp v. Belanger,* 2021 WL 5123734, at *2 (W.D. La. Nov. 3, 2021). *See also Austin,* 864 F.3d at 336; *Mehar Holdings,* 2016 WL 5957681, at *2.

[16]  *Rodriguez v. Flota Mercante Grancolombiana, S.A.,* 703 F.2d 1069, 1072 (9th Cir. 1983).

seaman status—has been alleged, a court's review is limited to the four corners of the plaintiff's state court petition.[17] As another court within the Fifth Circuit explained:

> The complaint invokes the Jones Act and asserts that plaintiff was a seaman, was employed by the defendant aboard the defendant's vessel, suffered injuries in the course of that employment, and received inadequate medical care for his injuries from his employer. ***That is sufficient to state a Jones Act claim.***[18]

So the plaintiff's state court petition is "most pertinent" to the inquiry.[19]

And the plaintiff's petition here contains all of the required allegations, and more.[20] Indeed, in his petition, the plaintiff alleges that (1) he is a seaman,[21] (2) he was working onboard the vessel owned by the defendants,[22] (3) he was a member of the defendants' crew,[23] (4) he was injured while contributing to, and aiding such vessel to accomplish its mission,[24] (5) he was injured while performing a maintenance task as ordered and instructed by the defendants,[25] (6) the task he was

---

[17]   *Pouchie v. Blck Hawk Shipping Enterprises,* 1995 WL 520044, at *1 (E.D. La. Aug. 31, 1995) (citing *Addison v. Gulf Coast Contracting Servs., Inc.,* 744 F.2d 494, 498 (5th Cir. 1984)).

[18]   *Pouchie,* 1995 WL 520044, at *1 (emphasis added).

[19]   *Addison,* 744 F.2d at 498 ("Accordingly, an analysis of Addison's state court amended complaint is most pertinent to the propriety of Texaco's removal.").

[20]   *See generally* Rec. Doc. 7-1, plaintiff's petition.

[21]   *Id.* at p. 13 of 89, ¶II.2 ("Plaintiff brings claims under the Jones Act and general maritime law. This Court has jurisdiction under the Savings to Suitors clause as Plaintiff is a seaman under the Jones Act . . ."). *See also id.* at p. 14 of 89, ¶IV.4 ("Plaintiff is a Jones Act Seaman.").

[22]   *Id.* at p. 15 of 89, ¶V.8 ("The *M/V Deepwater Conqueror* was owned, operated, and/or managed by all Defendants.").

[23]   *Id.* at pp. 14-15 of 89, ¶V.8 ("On or about January 1, 2021, Plaintiff was working as a Seaman aboard the *M/V Deepwater Conqueror* as a member of its crew.").

[24]   *Id.* at p. 15 of 89, ¶V.8 ("Further, at all relevant times, the *M/V Deepwater Conqueror* was deployed on navigable waters, and Plaintiff was contributing to, and aiding such vessel to accomplish its mission.").

[25]   *Id.* at ¶V.9 ("On January 1, 2021, the Defendants instructed Plaintiff to perform maintenance for the operation. . . . Plaintiff was injured as a direct result of performing his duties and following instructions to perform dangerous maintenance activities that day in furtherance of the Defendants' operations.") *See also Addison v. Gulf Coast Contracting Servs., Inc.,* 744 F.2d 494, 499 (5th Cir. 1984) ("By alleging the degree to which Texaco maintained supervision and control over him in

performing at the time of the injury was in furtherance of the defendants' operations,[26] and (7) Oceaneering arbitrarily and improperly denied him maintenance and cure for his injuries.[27]  And under the applicable law, this—without more—was sufficient for the Court to find that the plaintiff's Jones Act claim was properly pled.[28]

*Second*, in opposing the plaintiff's motion for remand, Oceaneering urged the Court to exceed its limited review and look *beyond* the four corners of the petition in ruling on the plaintiff's seaman status. So, in essence, Oceaneering asked the Court to treat the plaintiff's motion for remand as a motion for summary judgment on seaman status. But the request is inherently problematic. Not only is there "***no support*** for [the] position that the court look beyond the pleadings in considering a motion to remand ***a Jones Act case***,"[29] but identical efforts have been rejected by courts in the Fifth Circuit.[30]

---

the performance of his duties, Addison has properly alleged the requisite facts to establish an employment relationship with Texaco. Accordingly, we find that Addison has alleged sufficient facts to establish a claim under the Jones Act against Texaco.").

[26]  *Id.* ("Plaintiff was injured as a direct result of performing his duties and following instructions to perform dangerous maintenance activities that day in furtherance of the Defendants' operations.").

[27]  *Id.* at p. 16 of 89, ¶VI.13 ("Plaintiff seeks punitive damages against Defendant for arbitrarily and improperly denying maintenance and cure.") and p. 18 of 89, ¶VI.22 ("Defendant Oceaneering has failed to pay Plaintiff's maintenance and cure. Defendant Oceaneering has either not paid the owed maintenance and cure or have unreasonably and arbitrarily withheld the payment of maintenance and cure. Defendant Oceaneering has failed to provide Plaintiff with maintenance and cure despite knowing of Plaintiff's injuries that occurred during his work for Defendant Oceaneering. . . .").

[28]  *Pouchie v. Blck Hawk Shipping Enterprises,*1995 WL 520044, at *1 (E.D. La. Aug. 31, 1995) (emphasis added).

[29]  *Jones v. Derrick Hammers, Inc.,*1992 WL 125378, at *1 (E.D. La. May 20, 1992) (emphasis added).

[30]  *Id.* ("In opposing the plaintiff's motion to remand, the defendant Grace Offshore urges this Court to look beyond the pleadings and to treat this motion to remand as a motion for summary judgment on seaman status. However, the cases cited by Grace Offshore are not Jones Act cases. See generally *Carriere v. Sears, Roebuck & Company,* 893 F.2d 98 (5th Cir1990); *Alcom Electronic Exchange, Inc. v. Burgess,* 849 F.2d 964 (5th Cir.1988); *Keating v. Shell Chemical Company,* 610 F.2d 328 (5th Cir.1980). Therefore there is no support for its position that the court look beyond the pleadings in considering a motion to remand a Jones Act case.").

*Third*, even if Oceaneering were allowed to convert a **pleadings**-based motion to remand into a premature **evidence**-based summary judgment motion—which is denied—its burden of persuasion would be "a heavy one."[31] This is particularly so in the context of the seaman status inquiry because the same (1) is "fact-intensive,"[32] and (2) must be reserved for the jury.[33] And all that Oceaneering has put forth in an effort to meet this heavy burden[34]—and, accordingly, all that this Court had to consider on the issue[35]—is a declaration of Oceaneering's own employee. Certainly, a single piece of evidence offered in a form of an untested employee declaration does not come remotely close to meeting this exacting burden. Especially when an issue as consequential as that of a seaman status is at play.

And *fourth,* relatedly, this is exactly what the district courts have been cautioned **against**— "pretrying" substantial factual issues in the context of determining removal jurisdiction.[36] The

---

[31] *Burchett v. Cargill, Inc.,* 48 F.3d 173, 176 (5th Cir. 1995). *See also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").

[32] *Starks v. Advantage Staffing, LLC,* 202 F. Supp. 3d 607, 616 (E.D. La. 2016) ("The determination of a plaintiff's seaman status is typically a fact-intensive question for the jury."); *Manuel v. P.A.W. Drilling & Well Serv., Inc.,* 135 F.3d 344, 352 (5th Cir. 1998) ("Ordinarily, seaman status is a fact-specific inquiry better left to the province of the jury."); *Johnson v. Cont'l Grain Co.,* 58 F.3d 1232, 1235 (8th Cir. 1995) ("Seaman status is usually a fact-intensive inquiry properly left to the jury to resolve."); *Guidry v. S. Louisiana Contractors, Inc.,* 614 F.2d 447, 454 (5th Cir. 1980) ("Because seaman status ordinarily is a jury question, a court may rarely conclude as a matter of law that an individual is or is not a seaman within the meaning of the Jones Act.").

[33] *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 432 (5th Cir. 1984) ("Seaman status is generally a question for the jury. . . . Only in rare cases is the question taken from the jury or trier of facts. The issue is to be left to the jury even when the claim to seaman status appears to be relatively marginal.") (internal citations omitted). *See also Williams v. Milwhite Sales Co.,* 197 F. Supp. 730, 732 (E.D. La. 1961) ("Absent a complete failure of evidence, the jury **must** make this determination.") (emphasis added).

[34] *See generally* Rec. Doc. 8, Oceaneering's response to the plaintiff's motion to remand.

[35] Rec. Doc. 17, court's order, pp. 5-14 of 16.

[36] *Irvin v. Crum,* 2015 WL 9916721, at *3 (M.D. La. Dec. 30, 2015) ("The Fifth Circuit has 'frequently cautioned the district courts against pretrying a case to determine removal jurisdiction....' The court will not conduct a pre-trial determination of the merits of Plaintiff's malicious prosecution claim, as that would improperly result in

reason makes perfect sense. At such an early juncture in the proceeding, the plaintiff simply does not have the benefit of discovery and the opportunity to substantiate all of his allegations with evidence. Not only is this something that courts must take into account,[37] but the lack of such evidence—contrary to this Court's finding—is ***not*** dispositive at the remand stage.[38] As the Fifth Circuit recently explained:

> (. . . "[o]n a motion for summary judgment, the plaintiff's lack of evidence in support of her claims, after a sufficient period of discovery, could have a different effect" than at the motion to remand stage, where such lack of evidence is not dispositive). ***It would make little sense to apply the no-evidence summary judgment standard at the early stages of a case when improper joinder usually arises as the plaintiff typically will have had little opportunity to conduct discovery, hire experts, etc.*** Rather than a standard in which no evidence on the plaintiff's part may be dispositive, "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant....[39]

And Oceaneering fell far short of showing to this Court that there is ***no conceivable possibility*** for the plaintiff to establish a seaman status and prevail on his Jones Act claim. The mere fact that—out of the five factors—the Court found ***three*** to be in favor of the plaintiff's seaman status,[40]

---

'pretrying a case to determine removal jurisdiction.'"). *See also Freeman v. Wal-Mart Stores, Inc.,* 775 F. Supp. 208, 209 (W.D. La. 1991) ("We have been cautioned by the Fifth Circuit against pretrying a case to determine removal jurisdiction."); *Jones v. Derrick Hammers, Inc.,* 1992 WL 125378, at *1 (E.D. La. May 20, 1992) ("Furthermore, district courts should not 'pretry' substantive factual issues in order to make a preliminary determination as to the existence of subject matter jurisdiction on removal.").

[37] *Davidson v. Georgia-Pac., L.L.C.,* 819 F.3d 758, 767–68 (5th Cir. 2016) ("The district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non[ ]diverse defendant.") (internal citation omitted).

[38] Rec. Doc. 17, court's order, p. 10 of 16 ("[] Santee does not provide any evidence of this, but rather only makes conclusory allegations.").

[39] *Davidson*, 819 F.3d at 766 (emphasis added).

[40] Rec. Doc. 17, court's order, pp. 5-14 of 16.

shows that Oceaneering did not meet its burden and that sufficient ground exists for the question to go to the jury.[41]

By requesting that this Court strip the plaintiff off his seaman status too early in the case, Oceaneering improperly led the Court to (1) exceed its limited pleadings-based review, (2) ignore lack of discovery, and (3) conclude that a single (untested) piece of evidence offered by Oceaneering was sufficient for it to meet its "heavy" burden—despite the fact that the tally of the factors was, and continues to be, in the plaintiff's favor. The plaintiff respectfully suggests that each of these points—independently, but especially in combination—warrant that the Court reconsider its order.

### 3. The Court should also reconsider its finding that two out of five factors weigh decidedly against the plaintiff; the issue should go to the jury.

As noted, seaman status is a fact-intensive question for the jury. [42] In fact, unless absolutely *no* evidence exists to support the plaintiff's seaman status, the determination *must* go to the jury.[43] This is exactly what should happen here. For no less than four reasons.

---

[41]     *Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240, 248, N 15 (5th Cir. 1983) ("We reiterate that no particular factor is determinative of seaman status, each is indicative."); *Offshore Co. v. Robison,* 266 F.2d 769, 776 (5th Cir. 1959) ("'[E]ach case presents a different situation' and 'no single factor is controlling.'") (internal citations omitted in both).

[42]     *Starks v. Advantage Staffing, LLC,* 202 F. Supp. 3d 607, 616 (E.D. La. 2016) ("The determination of a plaintiff's seaman status is typically a fact-intensive question for the jury."); *Manuel v. P.A.W. Drilling & Well Serv., Inc.,* 135 F.3d 344, 352 (5th Cir. 1998) ("Ordinarily, seaman status is a fact-specific inquiry better left to the province of the jury."); *Johnson v. Cont'l Grain Co.,* 58 F.3d 1232, 1235 (8th Cir. 1995) ("Seaman status is usually a fact-intensive inquiry properly left to the jury to resolve."); *Guidry v. S. Louisiana Contractors, Inc.,* 614 F.2d 447, 454 (5th Cir. 1980) ("Because seaman status ordinarily is a jury question, a court may rarely conclude as a matter of law that an individual is or is not a seaman within the meaning of the Jones Act."); *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 432 (5th Cir. 1984) ("Seaman status is generally a question for the jury.").

[43]     *Williams v. Milwhite Sales Co.,* 197 F. Supp. 730, 732 (E.D. La. 1961) ("One thing is certain. Absent a complete failure of evidence, the jury must make this determination."). *See also Wallace,* 727 F.2d at 432 ("Only in rare cases is the question taken from the jury or trier of facts. The issue is to be left to the jury even when the claim to seaman status appears to be relatively marginal.") (internal citations omitted). *See also Braniff v. Jackson Ave.-Gretna Ferry, Inc.,* 280 F.2d 523, 527

First, the Supreme Court created a two-prong test to determine whether a plaintiff is considered a seaman under the Jones Act: (1) his duties must contribute to the function or mission of the vessel, and (2) he must have connection to the vessel that is substantial in duration and nature.[44] Also, in examining the nature of the plaintiff's connection to the vessel, the Fifth Circuit looks at the following three factors: (1) whether the plaintiff owes his allegations to the vessel or to his shoreside employer, (2) whether the plaintiff's work is sea-based or simply involves a seagoing activity, and (3) whether the plaintiff's assignment to the vessel is limited to a certain task—after which his connection to the vessel ends, or includes sailing with the vessel from location to location.[45] After evaluating each of these factors here, the Court found that three weigh *in favor* of the plaintiff's seaman status.

Specifically, the Court concluded—and Oceaneering does not dispute—that (1) the plaintiff's duties as an ROV superintendent contributed to the function or mission of the DEEPWATER CONQUEROR,[46] (2) the plaintiff's connection to the vessel was substantial in

---

(5th Cir. 1960) ("Attempts to fix unvarying meanings have a firm legal significance to such terms as 'seamen', 'vessel', 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts.").

[44]   *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 368 (1991); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995); *Harbor Tug and Barge Co. v Papai*, 520 U.S. 548. 554 (1997).

[45]   *Sanchez v. Smart Fabricators of Tex., LLC*, 997 F.3d 564, 574 (5th Cir. 2021).

[46]   Rec. Doc. 17, court's order, pp. 5-6 of 16 ("[T]he Court finds Santee's position as a ROV technician contributed to the function or mission of the *Deepwater Conqueror* and satisfies the first prong of the seaman-status test.").

duration,[47] and (3) the plaintiff's work on the vessel was sea-based.[48] Therefore, because the Court already found that the majority of the factors that dictate the seaman inquiry actually *favor* the plaintiff—and because "no single factor is determinative, each is indicative"[49]—the issue should be reserved for the jury.

Second, the Court's finding that the "allegiance to the vessel" factor cuts against the plaintiff seems to be at odds with the facts and the applicable law. Indeed, the Court held that the plaintiff owed his allegiance—not to the DEEPWATER CONQUEROR—but to Oceaneering because (1) the plaintiff provided no evidence that Oceaneering (his employer) owned or operated the vessel, and (2) the plaintiff followed a separate chain of command from that of the crew members.[50] But three points stand out.

*One,* the law in this regard is clear: In order to establish his seaman status under the Jones Act, the plaintiff is *not* required to show that his employer is the owner or operator of the vessel.[51] The Fifth Circuit jurisprudence dispels any doubt on the issue:

> ***We have never held that a seaman is barred from coverage under the Jones Act if the employer neither owns nor controls the several vessels upon which the seaman works***. Instead, we have specifically held that in the context of the single vessel, the

---

47    *Id.* at p. 8 of 16 ("Thus, based on Oceaneering's records of Santee's work history, Santee spent at least approximately 40% of his time over the last five years on the *Deepwater Conqueror.* Therefore, the Court finds Santee's work history satisfies the duration requirement of the second prong of the seaman-status test.").

48    *Id.* at p. 12 of 16 ("Therefore, the Court finds Santee's work on the *Deepwater Conqueror* was sea-based. Thus, this factor weighs in favor of finding Santee satisfies the nature requirement under the seaman-status test.").

49    *Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240, 248, N 15 (5th Cir. 1983) ("We reiterate that no particular factor is determinative of seaman status, each is indicative."); *Robison,* 266 F.2d at 776 ("'[E]ach case presents a different situation' and 'no single factor is controlling.'") (internal citations omitted in both).

50    Rec. Doc. 17, court's order, pp. 10-11 of 16.

51    *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 433 (5th Cir. 1984) ("A seaman's Jones Act employer need not be the owner of the vessel or vessels of which the seaman is a member of the crew.").

> employer need not be the owner or operator of the vessel for Jones
> Act liability to attach.[52]

To be sure, the fact that Oceaneering is not the owner or operator of the DEEPWATER CONQUEROR does not—and cannot—under the law, affect the plaintiff's rights under the Jones Act.[53] That is, the plaintiff cannot be deprived of his right to sue his employer under the Act "through extraneous arrangements with third parties."[54] So, regardless of the arrangement that Oceaneering may have had with the other defendants, so long as the plaintiff's continual service on the vessel contributed to the vessel's mission[55]—he is to be deemed a member of the vessel's crew.[56] And because this Court has correctly established that (1) the plaintiff's duties, in fact, did contribute to the vessel's mission,[57] and (2) the plaintiff's service to the vessel was continual and

---

[52]    *Id.* at 435 (emphasis added). *See also Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240, 245 (5th Cir. 1983) ("We have never held that a seaman is barred from coverage under the Jones Act if the employer neither owns nor controls the several vessels upon which the seaman works. Instead, we have specifically held that in the context of the single vessel, the employer need not be the owner or operator of the vessel for Jones Act liability to attach.").

[53]    *Williams v. Milwhite Sales Co.,* 197 F. Supp. 730, 732 (E.D. La. 1961) ("As long as the seaman is working as such for his employer, although on different vessels, he nevertheless may be a member of a crew of a vessel and covered by the Act. ***Nor can the fact that his employer does not control the operation of the vessels affect his rights under the Jones Act. Irrespective of what arrangements his employer may make with other persons relative to the operation and navigation of the vessels, if in fact the employee is contributing to the current mission of the vessels, on a more or less permanent basis, then, in law, he becomes a member of a crew of a vessel.***") (emphasis added).

[54]    *Id.* at 732–33 ("Under the Jones Act a seaman may sue only his employer, and that employer may not deprive him of that right through extraneous arrangements with third parties.").

[55]    *Id.* ("Under the Jones Act a seaman may sue only his employer, and that employer may not deprive him of that right through extraneous arrangements with third parties. For example, if an employer, instead of owning or operating vessels, merely provides the catering on vessels, employees used in that service on vessels may, on course, be members of a crew of a vessel within the meaning of the Act. Feeding the crew certainly contributes to the vessel's mission, whatever it is. Under those circumstances, ***no more or less permanent attachment to a particular vessel would be required, as long as there was continuity of service on vessels***.") (emphasis added).

[56]    *Id.*

[57]    Rec. Doc. 17, court's order, pp. 5-6 of 16 ("[T]he Court finds Santee's position as a ROV technician contributed to the function or mission of the *Deepwater Conqueror* and satisfies the first prong of the seaman-status test.").

substantial in duration,[58] it was a mistake to conclude that the plaintiff is not a seaman and a member of the vessel's crew.

*Two,* while the plaintiff was faulted for not providing any evidence to support his seaman status in the remand phase, the law imposes no such requirement on the plaintiff. Indeed, in the context of a motion to remand, the plaintiff respectfully suggests that the Court should have limited its review to the plaintiff's petition—and only the petition.[59] And the reason is simple. As discussed above, "[i]t would make little sense to apply the no-evidence summary judgment standard at the early stages of a case" since the plaintiff—by that point—"had little opportunity to conduct discovery, hire experts, etc."[60]

And *three,* despite what Oceaneering may claim, it is factually untrue that the plaintiff followed a separate chain of command from that of the other crew members onboard the vessel. Indeed, as he stated in his declaration, the plaintiff made clear that he "was ***not*** subject to a separate chain of command from the other crew members."[61] In fact, not only did the plaintiff "report[] directly to the company man for Chevron who was in charge of the vessel," but he—just like the other crew members, "also received orders and instructions from the ***captain of the vessel***."[62] What is more, the other crew members treated the plaintiff as a fellow crew member by giving him

---

[58]  *Id.* at p. 8 of 16 ("Thus, based on Oceaneering's records of Santee's work history, Santee spent at least approximately 40% of his time over the last five years on the *Deepwater Conqueror.* Therefore, the Court finds Santee's work history satisfies the duration requirement of the second prong of the seaman-status test.").

[59]  *Pouchie v. Blck Hawk Shipping Enterprises,* 1995 WL 520044, at *1 (E.D. La. Aug. 31, 1995). *See also Addison v. Gulf Coast Contracting Servs., Inc.,* 744 F.2d 494, 498 (5th Cir. 1984) ("Accordingly, an analysis of Addison's state court amended complaint is most pertinent to the propriety of Texaco's removal.").

[60]  *Davidson*, 819 F.3d at 766 (emphasis added).

[61]  Exhibit 1, the plaintiff's declaration, ¶6 (emphasis added).

[62]  *Id.*

orders, if they were above him in the chain of command, or by following his orders, if they were below him in the chain of command.[63] For all intents and purposes, then, the plaintiff was actually "integrated" into the chain of command aboard the DEEPWATER CONQUEROR.[64] So, contrary to Oceaneering's prior arguments to the Court, the chain of command aboard the vessel as well as the plaintiff's role within it is a highly ***disputed*** fact—and it is one that (mis)shaped the Court's remand order.

The third reason why the plaintiff respectfully requests that the Court reconsider its order denying remand is its analysis regarding the "assignment to the vessel" factor. Here, the Court found this factor to weigh against the seaman status because the plaintiff was never "permanently" assigned to the vessel.[65] But the interpretation of this "permanent" assignment is not as literal under the law as Oceaneering had suggested to this Court. Two points loom large.

*One,* the plaintiff can satisfy the requisite vessel relationship by showing ***either*** his permanent assignment to the vessel ***or*** that the performance of a substantial part of his work was aboard the vessel.[66] In examining the permanency requirement, the courts focus on (1) the degree of exposure to the hazards or perils of the sea, and (2) the maritime or *terra firma* nature of the plaintiff's duties.[67] Simply put "[t]he requirement of a relatively permanent tie to the vessel is meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he

---

[63]     *Id.* at ¶7.

[64]     *Id.*

[65]     Rec. Doc. 17, court's order, pp. 12-13 of 16.

[66]     *Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240, 246 (5th Cir. 1983).

[67]     *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 434 (5th Cir. 1984).

serves aboard a vessel for a relatively short period of time."[68] The plaintiff here did not board the DEEPWATER CONQUEROR for some isolated and fortuitous seaman-like duties. Indeed, the situs of all of his primary responsibilities—responsibilities that were, as the Court found, maritime in nature[69]—was aboard the vessel. And these responsibilities, among others, included: maintaining and installing ROV systems that are specifically designed for subsea inspections underwater, operating ROV systems subsea underwater (*i.e.,* a remote submarine), providing support for sea-based drilling, and training for strictly sea-based drills—such as man overboard drills, abandon ship drills, launching lifeboat drills, life jacket drills, etc.[70]—which, as this Court would recognize, are all drills on which *seamen* are trained for offshore emergencies. So, the plaintiff's seaman status is clearly established here by (1) the maritime nature of his work, and (2) the fact that he was exposed to maritime perils with regularity and continuity.[71]

And *two,* in lieu of showing permanency, the plaintiff may demonstrate his assignment to the vessel if a substantial part of his work was performed aboard the vessel.[72] And to satisfy that prong, "it must be shown that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity."[73] Here, the plaintiff can make that showing with

---

[68] *Id.* at 434–35.

[69] Rec. Doc. 17, court's order, pp. 11-12 of 16 ("It is undisputed Santee's work as a ROV technician was sea-based, as ROVs are subsea vehicles which must be at sea to operate. Oceaneering's own records show Santee spent a significant amount of time at sea on various contracts, for Chevron and other clients. Therefore, the Court finds Santee's work on the *Deepwater Conqueror* was sea-based.").

[70] Exhibit 1, the plaintiff's declaration, ¶3.

[71] *Wallace,* 727 F.2d at 436 ("[T]he seaman status of Wallace is established by his exposure to maritime perils with regularity and continuity, and the maritime nature of his primary duties.").

[72] *Bertrand,* 700 F.2d at 246. *See also Lormand v. Superior Oil Co.,* 845 F.2d 536, 540 (5th Cir. 1987) ("Since the first prong of this test is disjunctive, a worker may qualify as a seaman, even though he has not been permanently assigned to the crew of the vessel, if he does substantial work on the vessel.").

[73] *Bertrand,* 700 F.2d at 246.

ease. Indeed, for the past 23 years while under Oceaneering's employ, the plaintiff performed 95% of his work at sea.[74] In fact, only 5% of his work was based onshore—and that only included either training or preparing an ROV system before it would go onto a vessel offshore.[75] To make it painstakingly clear, out of 365 days a year, the plaintiff spent *less than 10 days* onshore.[76] He also, just like the other crew members, ate and slept aboard the DEEPWATER CONQUEROR—often 21 days at a time.[77] And his assignment to this vessel was five years long and counting.[78] This amount of time was not, by any measure, brief. Nor was it for a definitive duration, as the plaintiff's assignment to the DEEPWATER CONQUEROR had no known end date.[79] Besides, notably, "as long as there was continuity of service *on vessels* [generally]," "no more or less permanent attachment to *a particular vessel* would be required."[80] As the Court has already found, "Oceaneering's records of Santee's work history beginning in 2004 shows he spent a large part of his career with Oceaneering on various vessels."[81] So the continual nature of his maritime duties aboard vessels cannot reasonably be questioned. As a result of this "general" on-vessel continuity, and contrary to Oceaneering's arguments to the Court, the plaintiff is *not* required to show any permanent assignment to the DEEPWATER CONQUEROR itself.[82] Yet, he still made that showing here.

---

[74]    Exhibit 1, the plaintiff's declaration, ¶4.

[75]    *Id.*

[76]    *Id.*

[77]    *Id.* at ¶7.

[78]    *Id.* at ¶5.

[79]    *Id.*

[80]    *Williams v. Milwhite Sales Co.,* 197 F. Supp. 730, 732–33 (E.D. La. 1961) (emphasis added).

[81]    Rec. Doc. 17, court's order, p. 7 of 16.

[82]    *Williams,* 197 F. Supp. at 732–33.

And finally, the plaintiff respectfully suggests that Court should reconsider its denial of the plaintiff's seaman status because of one more simple fact. Namely, what was conspicuously missing from Oceaneering's remand briefs—but has since come to light—is that Oceaneering itself impliedly **admitted** that the plaintiff is, in fact, a seaman. So, contrary to what it argued to this Court in its papers, Oceaneering was paying maintenance and cure benefits to the plaintiff—benefits that are only available to **seamen**[83]—from February 1, 2021 until October 14, 2021.[84] And in this Circuit, "the payment of maintenance may properly be admitted as evidence of seaman status."[85] The mere existence of this payment evidence—evidence that this Court did not get to see prior to its ruling on remand—demands that the issue regarding the plaintiff's seaman status be presented to the jury.[86]

The net sum of the above is straightforward: This Court has more than sufficient reasons to reconsider its ruling denying the plaintiff's seaman status. Based on the foregoing, the record in

---

[83] *Hall v. Diamond M Co.,* 732 F.2d 1246, 1248 (5th Cir. 1984) ("Only seamen are entitled to the benefits of maintenance and cure."). *See also George v. Cal-Dive Int'l, Inc.,* 2010 WL 2696876, at *6 (E.D. La. July 1, 2010) ("Recovery of maintenance and cure benefits is contingent on an employee's status as a seaman."); *Hodges v. Keystone Shipping Co.,* 578 F. Supp. 620, 622 (S.D. Tex. 1983) ("The right to maintenance originates from an individual's seaman status and is a term of the employment which cannot be contracted away."); *Saienni v. Cap. Marine Supply, Inc.,* 2005 WL 940558, at *2 (E.D. La. Apr. 18, 2005), n. 20 ("Additionally, an LHWCA worker, unlike a Jones Act seaman, does not have a cause of action for unseaworthiness, nor does a non-seaman have a claim for maintenance and cure."); *Brister v. A.W.I., Inc.,* 946 F.2d 350, 360 (5th Cir. 1991) ("A seaman's right to maintenance and cure is implied in the employment contract between seaman and shipowner.").

[84] Exhibit 1, the plaintiff's declaration, ¶8. *See also* Exhibit 1-A, Oceaneering's payments of maintenance and cure benefits to the plaintiff.

[85] *Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 359 (5th Cir. 1999) ("Maintenance is a seaman's remedy, and in special circumstances the payment of maintenance may properly be admitted as evidence of seaman status.").

[86] *Williams v. Milwhite Sales Co.,* 197 F. Supp. 730, 732 (E.D. La. 1961) ("One thing is certain. Absent a complete failure of evidence, the jury must make this determination.").

this case now contains evidence in light of which reasonable persons could find that the plaintiff was a seaman. The plaintiff respectfully requests that the Court grant his motion in full.

**B.     That notwithstanding, Oceaneering's premature attempt at summary judgment is hallow and should be rejected by the Court.**

Should the Court find that reconsideration is warranted, Oceaneering's motion for summary judgment should be denied as moot. This is so because Oceaneering's motion rests *exclusively* on the Court's order denying the plaintiff's seaman status.[87] Indeed, Oceaneering did not attach a single piece of evidence in support of its motion raised on this ground.[88] Nor did it even bother to provide the Court with a statement of undisputed facts. So any reconsideration of the Court's underlying order entirely dooms Oceaneering's attempt at summary judgment. Solely in the alternative, however, should the Court find that reconsideration somehow is not necessary, Oceaneering's motion still fails on the merits.

**1.     Summary judgment is proper only if there are no disputed material facts; and in the "seaman status" context, that is extremely rare.**

Summary judgment on seaman status in Jones Act cases is "rarely proper."[89] In fact, summary judgment on the issue of seaman status is only proper "where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences on *any* of the elements of the seaman test."[90] Said another way, "summary judgment on seaman status is proper 'where the only rational inference to be drawn from the evidence is that the worker is not a seaman."[91]

---

[87]     Rec. Doc. 19, Oceaneering's motion for summary judgment, p. 3 and p. 5 of 6.

[88]     The only exhibit attached to the Oceaneering's motion is a declaration pertinent to its claim of immunity under the LHWCA.

[89]     *Starks v. Advantage Staffing, LLC*, 202 F. Supp. 3d 607, 611 (E.D. La. 2016).

[90]     *Bernard v. Binnings Const. Co.,* 741 F.2d 824, 828 (5th Cir. 1984).

[91]     *Id.*

The burden on a summary judgment is on the movant to show that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law.[92] The procedure tests simply for the existence, not the extent, of these genuine disputes.[93] This means that where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper.[94] All reasonable inferences are drawn in favor of the non-moving party.[95] Finally, on a summary judgment motion, "if the court determines that a dispute exists concerning the facts needed to determine seaman status, it is the province of the jury to determine whether the legal standard has been met."[96]

2.      **A genuine factual dispute regarding the plaintiff's seaman status is palpable; summary judgment is improper and must be denied.**

In light of the governing law, Oceaneering here did not—and cannot—meet its summary judgment burden in showing a complete lack of factual issue on the question of the plaintiff's seaman status. Three reasons explain why.

First, this Court has affirmatively established that three out of five factors that dictate the seaman status decidedly favor ***the plaintiff***.[97] And because "no particular factor is determinative,"[98] the Court's very ruling—the ruling on which Oceaneering's entire motion is

---

[92]     *Source Prod. & Equip. Co. v. Schehr,* 2020 WL 1531269, at *4 (E.D. La. Mar. 31, 2020). *See also Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994).

[93]     *Credeur v. Louisiana Through Off. of Att'y Gen.,* 860 F.3d 785 (5th Cir. 2017).

[94]     *Smith v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.,* 372 F. Supp. 3d 431, 438 (E.D. La. 2019).

[95]     *Sanchez v. Am. Pollution Control Corp.,* 542 F. Supp. 3d 446, 450 (E.D. La. 2021).

[96]     *Newsom v. Cont'l Grain Co.,* 820 F. Supp. 1187, 1189 (D. Minn. 1993).

[97]     Rec. Doc. 17, court's order, pp. 5-14 of 16.

[98]     *Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240, 248, N 15 (5th Cir. 1983) ("We reiterate that no particular factor is determinative of seaman status, each is indicative."); *Offshore Co. v.*

based—reveals that "reasonable persons might draw conflicting references on **any** of these" factors and mandates that the issue proceed to the jury.[99]

Second, in light of the analysis above, the plaintiff has more than just created a genuine issue with respect to the remaining two factors which the Court found weigh against his seaman status. For the reasons already stated—which are hereby fully incorporated by reference for brevity purposes—the Court's finding that the "allegiance" and "assignment" to the vessel factors are unfavorable to the plaintiff should, respectfully, be reconsidered in light of now plainly contested facts and the applicable law.

Third, while arguing against the plaintiff's seaman status to this Court, Oceaneering was doing the opposite in real life. Indeed, Oceaneering cannot credibly dispute that it had been paying the plaintiff's seaman maintenance and cure benefits from February 1, 2021 until October 14, 2021.[100] And "the payment of maintenance may properly be admitted as evidence of seaman status."[101] With such evidence in the record, genuine factual issue clearly persists—making Oceaneering's summary judgment improper.

And fourth, the burden on summary judgment in and of itself is already heavy. But it is particularly heavy when raised on the issue of seaman status because this determination can, under the law, be taken from the jury only when absolutely **no evidence** exists to support it.[102] And that

---

    *Robison,* 266 F.2d 769, 776 (5th Cir. 1959) ("'[E]ach case presents a different situation' and 'no single factor is controlling.'") (internal citations omitted in both).

[99]  *Bernard v. Binnings Const. Co.,* 741 F.2d 824, 828 (5th Cir. 1984).

[100]  Exhibit 1, the plaintiff's declaration, ¶8.

[101]  *Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 359 (5th Cir. 1999) ("Maintenance is a seaman's remedy, and in special circumstances the payment of maintenance may properly be admitted as evidence of seaman status.").

[102]  *Williams v. Milwhite Sales Co.,* 197 F. Supp. 730, 732 (E.D. La. 1961) ("One thing is certain. Absent a complete failure of evidence, the jury must make this determination.").

is clearly not the case here. Oceaneering's payments of maintenance and cure benefits to the plaintiff,[103] as well as the plaintiff's declaration,[104] are only some of the currently available evidence that doom Oceaneering's attempt at summary judgment entirely.

Applying the statutory standard to the evidence in the record, reasonable jurors could reach different conclusions—not only as to the plaintiff's seaman status—but also as to each and every factor underpinning this inquiry. Oceaneering's summary judgment cannot survive this simple truth. Its motion should be denied.

## III.    CONCLUSION

The plaintiff respectfully suggests that the Court has more than sufficient reasons to reconsider its order denying the plaintiff's seaman status. Doing so would render Oceaneering's motion raised on the issue moot. That notwithstanding, Oceaneering's motion fails, too, on the merits and should be denied.

---

[103]    Exhibit 1-A, Oceaneering's payments of maintenance and cure benefits to the plaintiff.

[104]    *See generally* Exhibit 1, the plaintiff's declaration.

Respectfully submitted,

**ARNOLD & ITKIN LLP**

/s/      Kyle Findley
KURT ARNOLD
SBN: 24036150
karnold@arnolditkin.com
J. Kyle Findley
SBN: 24076382
kfindley@arnolditkin.com
Adam D. Lewis
SBN: 24094099
alewis@arnolditkin.com
6009 Memorial Drive
Houston, TX 77007
Telephone: 713-222-3800
Facsimile: 713-222-3850

For electronic service:
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify this was served upon all counsel of record this 28th day of April, 2022 by

e-filing it into the CM/ECF system, which will automatically deliver a copy to all counsel.

/s/      Kyle Findley